McINTYRE *v.* LYON.

1. Fraud—Elements—Evidence.

To constitute actionable fraud there must be proved with a reasonable degree of certainty each of the following elements: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

References for Points in Headnotes

[1] 23 Am Jur, Fraud and Deceit, § 20.
[2] 23 Am Jur, Fraud and Deceit, §§ 141, 144.

2. SAME—SALE OF STOCK—MISREPRESENTATION AS TO VALUE—RE-
   LIANCE—EVIDENCE.

   In an action for damages for fraudulent misrepresentation
   in the sale of unlisted stock in a corporation, where plain-
   tiff's own testimony shows that notwithstanding he claims
   he thought the stock was worth more than defendants had
   told him it was worth, he deemed it advisable to sell his
   stock because he was fearful of a loss if he did not do so,
   the sale was not made in reliance upon their claimed mis-
   representation; hence, he was not entitled to recover.

Appeal from Wayne; Miller (Guy A.), J. Sub-
mitted April 7, 1949. (Docket No. 29, Calendar No.
44,198.) Decided June 6, 1949.

Bill by George F. McIntyre against Chester E.
Lyon and others for damages caused by fraudulent
misrepresentation of value of stock. Equitable
Trust Company, receiver of Lyon Screw Products,
Inc., added as party defendant. Case transferred
to law side and judgment for plaintiff entered
against defendants Lyon, Lyon Screw Products,
Inc., and McCrory. Defendants Lyon and Lyon
Screw Products, Inc., appeal. Reversed and re-
manded for entry of judgment for appellants.

*Daines & Daines,* for plaintiff.

*Dexter & McInally,* for defendant Lyon Screw
Products, Inc.

*Howard Cline,* for defendant Lyon.

*Victor H. Hampton,* of counsel, for defendant-
appellants.

CARR, J. On or about May 17, 1941, plaintiff pur-
chased from the defendant Lyon Screw Products,
Inc., 1,000 shares of its capital stock for which he

paid $1 per share. From time to time he inquired of defendants concerning the value of the stock and the progress of the company. It is his claim that in response to each such inquiry he was advised that his stock was worth $1.50 per share. On or about September 30, 1943, he sold it to the company for $1,500, indorsing the certificate and acknowledging receipt of the consideration. In December, 1944, he filed suit in equity alleging that defendants had fraudulently misrepresented the value of the stock, that at the time of the sale by him it was worth approximately $30 per share, that the representation was known to defendants to be false, that it was made for the purpose of inducing plaintiff to sell his stock, that he relied thereon, and that he suffered injury in consequence.

The defendants named in the suit filed their answer to the bill of complaint, denying the material allegations thereof and asserting that plaintiff wished to sell his stock for the purpose of obtaining money for business purposes. Thereafter the Equitable Trust Company, as receiver of the Lyon Screw Products, having been added as a party defendant by order of the court, filed its answer likewise denying plaintiff's right to the relief sought. On the trial of the case, at the conclusion of plaintiff's proofs, defendants moved to dismiss. The motion was denied.

Following the trial of the case, the circuit judge concluded from the evidence that the value of the stock was in fact misrepresented by defendants, and that it was worth at the time of the transaction in question approximately 6½ dollars per share. On motion the case was dismissed as to the defendant Hill. The court being of the opinion that the action was merely one for damages and not properly instituted in equity, it was transferred to the law side and judgment entered accordingly against defend-

ants Lyon, McCrory, and Lyon Screw Products, Inc. From such judgment defendants Lyon and Lyon Screw Products, Inc., have appealed.

It is the claim of the appellants that plaintiff failed to make out a cause of action in that his proofs did not show that he relied on the alleged misrepresentation of the defendants as to the value of the stock. The facts necessary to be established in order to justify a recovery in a case of this character have been repeatedly considered by this Court. In *Candler* v. *Heigho,* 208 Mich 115, in holding that a verdict was properly directed in defendants' favor on the ground that plaintiffs' proofs indicated affirmatively that there was no reliance on the alleged false representations made by the defendants, it was said:

"There is no conflict of opinion as to the character of the proofs which plaintiffs must have submitted to entitle them to the verdict of a jury. It is well stated in 20 Cyc, at page 13:

" 'The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.' "

Plaintiff's testimony indicates that he did not have confidence in the management of the defendant corporation. It was his claim on the trial that from time to time he sought information with reference to the business but was denied access to the records.

He claims that defendants advised him that the Lyon Screw Products, Inc., was a "closed corporation" and under no legal obligation to give information to its shareholders. His explanation as to what occurred at the time of the sale of the stock by him is set forth in his testimony on direct examination, in response to questions by his counsel, as follows:

"*A*. Well, I usually went there about—oh, every four or five months, just drop in and talked to them. The last time I went down Mr. McCrory asked me—that was October 1, 1943, when I sold my stock—and he asked me if I wanted to sell my stock, and I asked him the usual questions of how much the stock was worth, and he said, 'I think it is worth a dollar and a half, isn't it, Jack'—referring to Mr. Lyon. Mr. Lyon said, 'The last time you checked in the books that was what the value was, and that was about a week previously.'

"*Q*. (By *Mr. Daines*) This date was the first of October, 1943?

"*A*. Yes, sir. And at the same time I was there on October 1st, I was kind of suspicious of whether the stock was worth a dollar and a half or what it was worth. Of course, it was never listed on the market, and there was no way of me finding out what it was worth. And I asked Mr. McCrory if I could look at the books. I am not a bookkeeper, but I can kind of get some idea what kind of value it had; and he gave me the answer he had on the financial statements, that it was a closed corporation and nobody was permitted to see the books.

"*Q*. Did you inquire at that time as to the business conditions of the corporation?

"*A*. I asked him how things were going, and he said, 'Well, you can sell your stock now and get out while you can make a $500 profit on your thousand dollar investment.'

"*Q*. Who told you that?

"*A*. Mr. McCrory.

"*Q.* Did you have any further conversation with them that day?

"*A.* No, I just sold my stock, and that was all."

Interrogated further on cross-examination with reference to the matter, he testified as follows:

"*Q.* At the time of this sale, you say you made an inquiry of Mr. McCrory again, what the stock was worth?

"*A.* Yes, sir.

"*Q.* And then what did you tell him?

"*A.* I asked him if there was any way of me finding out exactly what the stock was worth, because all I could do was take their word for it. And he said it was a closed corporation and you had no right to look at any books or anything.

"*Q.* And how did that make you feel?

"*A.* That made me more suspicious that something was wrong.

"*Q.* In other words, that your stock was worth more than that?

"*A.* Yes.

"*Q.* And yet you sold it.

"*A.* I figured if I didn't get out at that time I would lose the stock I had.

"*Q.* And maybe you thought the stock was worth less than that.

"*A.* I thought it was worth more.

"*Q.* Yet, feeling that it was worth more, you sold it. Why?

"*A.* The way things were going I thought I would probably take a loss from it.   *   *   *

"*Q.* Now, at the time that you were down there in October, 1943, the plant had then moved to 12th Street?

"*A.* Yes, sir.

"*Q.* There was a lot of business? Machinery was whirling and there was lots of activity, and so you felt at that time that your stock was worth more than a dollar and a half a share?

"*A.* I did, yes.

"*Q.* Then why did you sell it?

"*A.* It seemed to me that something was wrong, and that if I didn't get out at the time I would probably lose more than I could get at that time.

"*Q.* Then you must have thought that maybe the stock wasn't worth a dollar and a half a share?

"*A.* I knew it was worth more, but I didn't know how to go about proving it was worth more."

Plaintiff did not claim in his testimony that he relied on the truth of the representation that he said defendants made to him concerning the value of the stock. On the contrary it clearly appears that he thought something was wrong, that he deemed it advisable to sell his stock, that he was fearful of a loss if he did not do so, and that he believed at the time that the stock was worth more than $1.50 per share. The conclusion cannot be avoided that plaintiff did not at the time have confidence in the defendants, that he did not believe their statement as to the value of the stock, and that he made the sale for the reasons indicated by him rather than in reliance on the alleged misrepresentation.

In *Kimble* v. *Gillard,* 177 Mich 250, a somewhat analogous situation was presented. There plaintiff, who claimed that he had been defrauded in a transaction involving the purchase of property by him, indicated in his testimony on the trial that he had entered into the contract because one of the defendants was putting his money into the property and he (plaintiff) was willing to do likewise. In commenting on the situation, it was said:

"As far as the representations of appellant to plaintiff, relied upon in the declaration, whereby plaintiff claimed to have been defrauded, are concerned, the foregoing quotation from his testimony fatally varies from the declaration, and the court was in error in not so holding.

"It is a well-settled rule, familiar and fundamental, that, in order to make misrepresentation actionable, there must be a reliance upon the representation. *Parker* v. *Armstrong*, 55 Mich 176; 20 Cyc, pp 108, 109, and cases cited.

"All the material allegations relied upon in an action for damages for false representations must be proved substantially as alleged. The motion of defendant for a directed verdict should have been granted upon this ground."

Among other cases recognizing the rule that reliance on alleged false representations must be proved in order to permit recovery of damages are *Pratt* v. *Burhans*, 84 Mich 487 (22 Am St Rep 703); *Krushew* v. *Meitz*, 276 Mich 553. See, also, *Lebeis* v. *Rutzen*, 289 Mich 1; 37 CJS, p 267; 23 Am Jur, p 939 *et seq.* Knowledge of the falsity of representations is inconsistent with reliance thereon. *Candler* v. *Heigho*, *supra; De Grasse* v. *Verona Mining Co.*, 185 Mich 514; *Beverly* v. *Richards*, 255 Mich 508.

The conclusion of the trial court that plaintiff acted in reliance on the alleged misrepresentation as to the value of the stock is not sustained by the proof. The testimony of the plaintiff clearly indicates that such was not the fact. It must be said, therefore, that plaintiff failed to make out his alleged cause of action for fraudulent misrepresentation and is in consequence not entitled to recover. This conclusion renders it unnecessary to consider the competency of the testimony relating to the value of the stock as of September 30, 1943. The cause is remanded to the circuit court with directions to set aside the judgment in favor of plaintiff, and to enter a judgment in favor of appellants, with costs.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, DETHMERS, and BUTZEL, JJ., concurred.