HERPOLSHEIMER *v.* A. B. HERPOLSHEIMER
REALTY COMPANY.

1. EQUITY—MOTION TO DISMISS—PLEADING.

> The well-pleaded allegations in a bill of complaint must be accepted as true when determining whether or not defendants' motion to dismiss was properly denied.

2. VENUE—CHANCERY CASES—FRAUD.

> Bill for determination of property rights and for an accounting, filed as a class action by income beneficiary under a trust and potential remainderman, was properly filed in county of his residence, which was other than that in which the property was located, where it was against corporation and distributees of its assets for fraud claimed to have been perpetrated by the corporation upon the trust and which impaired it and bill claimed that the loss thus caused should be borne by the corporation and its distributees, since it sought action *in personam* (CLS 1954, § 610.1).

3. EQUITY—JURISDICTION.

> A court of chancery has plenary power to affect the title to real estate beyond its territorial jurisdiction by direction of a sale and conveyance thereof or by its decree in suits to execute trusts, to undo frauds, and to enforce contracts regarding such real estate, whenever it has acquired jurisdiction of the persons of the parties interested therein, for the reason that equity acts through the person.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error § 852.
[2, 10, 11] 56 Am Jur, Venue § 21.
[3] 19 Am Jur, Equity § 25.
[4] 19 Am Jur, Equity § 221.
[4, 5] 19 Am Jur, Equity § 226.
[5] 19 Am Jur, Equity § 227.
[6] 19 Am Jur, Equity §§ 123, 125.
[7, 8] 19 Am Jur, Equity § 42.
[9] 19 Am Jur, Equity § 167.
[10, 11] 56 Am Jur, Venue § 22.
[12] 56 Am Jur, Venue § 53.

4. Same—Local Subject Matter.

The premises of a bill in equity, not its prayer, are determinative as to whether or not its substance is local in character.

5. Same—Pleading.

The relief within the scope of a bill in chancery is the final responsibility of the chancellor, the prayer aiding, rather than dictating, equity's decree.

6. Same—Jurisdiction—Relief.

Once equity jurisdiction is established, the court may grant reliefs which are peculiarly equitable, or which are wholly pecuniary, but in conferring reliefs which are purely equitable the court can always shape its remedy so as to meet the demands of justice, however peculiar.

7. Same—Fraud—Restoration.

The fundamental theory upon which equity acts is that of restoration, of restoring the defrauded party, primarily, and the fraudulent party as a necessary incident, to the positions they occupied before the fraud was committed.

8. Same—Fraud—Remedy.

The remedy which equity gives to the defrauded person reaches all those who were actually concerned in the fraud, all who directly and knowingly participated in its fruits, and all those who derive title from them voluntarily or with notice and the remedy may be made effective by means of a conveyance, accounting, payment, injunction or other appropriate remedy.

9. Same—Trusts—Fraud.

When property subject to a trust is fraudulently transferred, equity may work out and protect the rights of the beneficial owner by regarding the property as though it were actually impressed with a trust in the hands of the one who holds the legal title by treating such person as though he were an actual trustee and by enforcing such trust by some appropriate remedy such as conveyance, accounting, payment or injunction.

10. Venue—Equity—Statutes.

Portion of venue statute relative to equity suits pertaining to suits affecting real estate located in more than 1 county does not modify preceding clause as to venue in equity suits brought for accounting and ancillary relief (CLS 1954, § 610.1).

11. Same—Trusts—Fraud.

The fact that trust in which plaintiff is an income beneficiary and potentially a remainderman has been administered in

Kent -county is not determinative of venue of class suit for accounting and other relief against corporation and its distributees for fraud in connection with conveyances of trust assets in which the bill was filed in Ottawa county (CLS 1954, § 610.1).

12. SAME—CHANGE—MOTIONS.

The matter of a change of venue of an equity suit, for reasons of convenience of the parties, is presented by a motion for change of venue, not by way of a motion to dismiss.

Appeal from Ottawa; Smith (Raymond L.), J. Submitted January 13, 1956. (Docket No. 51, Calendar No. 46,657.) Decided March 1, 1956.

Bill by Edward M. Herpolsheimer against A. B. Herpolsheimer Realty Company, a Michigan corporation, Michigan Trust Company and Nellie B. Herpolsheimer, trustees under the will of Arthur B. Herpolsheimer, and Michigan Trust Company, trustee for Claire V. Knappen, and others for determination of rights in property, accounting and money judgment. Motion to dismiss denied. Defendants appeal. Affirmed.

*Schmidt, Smith & Howlett,* for plaintiff.

*McCobb, Heaney & Dunn (Edward C. McCobb,* of counsel), for defendant Michigan Trust Company.

*Alexander, Cholette, Buchanan, Perkins & Conklin (Paul E. Cholette,* of counsel), for defendant A. B. Herpolsheimer Realty Company.

BLACK, J. By application for leave to appeal granted October 13, 1955, defendant-appellants A. B. Herpolsheimer Realty Company, a Michigan corporation, Michigan Trust Company and Nellie B. Herpolsheimer, trustees under the will of Arthur B. Herpolsheimer, and Michigan Trust Company, trus-

tee for Claire V. Knappen, review denial of their motion to dismiss plaintiff's bill. The bill was filed in Ottawa county. The order of denial was entered by the Honorable Raymond L. Smith, circuit judge.

Appellants' motion to dismiss pivots on CLS 1954, § 610.1 (Stat Ann 1953 Cum Supp § 27.641), reading as follows:

"Every suit in chancery shall be commenced in the circuit court for the county in which the property in dispute is situated, if the subject matter is local, and if it is not local, in the county where 1 of the parties in interest resides, if either is a resident of the State."

If the subject matter of this suit is not local, the bill was properly filed in the Ottawa circuit and the chancellor was right in denying the motion. If, on the other hand, the subject matter is local, the motion is entitled to due honor here. The issue must be resolved by careful analysis of plaintiff's bill in light of the statute and our previous decisions. We must, of course, accept its allegations as true.

*First:* The bill alleges that plaintiff was and is a resident of Ottawa county. It then sets forth:

"2. Plaintiff is a present income beneficiary and potential remainderman of a trust created by paragraph 12 of the last will and testament of William G. Herpolsheimer, deceased, which trust is now being administered under the jurisdiction of the probate court for the county of Kent and State of Michigan and is hereinafter referred to as the 'Trust'. Said plaintiff brings this suit as a class action for the benefit of all of said beneficiaries.

"3. Defendant A. B. Herpolsheimer Realty Company is a Michigan corporation which, although dissolved in July, 1952, is at this date by statute a body corporate for the purpose of suits and is hereinafter referred to as the corporate defendant. The other defendants are former stockholders of the corporate

defendant to whom its assets were distributed and are hereinafter referred to as the individual defendants. Caroline M. Richter and Amelia H. Herrmann each reside out of the State of Michigan.

"4. Prior to May 20, 1946, the corporate defendant, in addition to other property owned by it, was the owner of a certain 7-story building known as the Blodgett building located on the following described real estate: * * * (Here follows legal description.)

"5. Prior to May 20, 1946, the trust held title to buildings adjoining that of the corporate defendant and located on the following described real estate: * * * (Here follows legal description.)

"Prior to May 20, 1946, the then tenant of both properties insisted that, if it leased said premises after August 1, 1949, the buildings would have to be joined into a single building rather than being left as separate units with dividing walls and partitions. For this reason, the corporate defendant and the trust reached a tentative agreement to create a tenancy in common. During these negotiations the corporate defendant falsely and fraudulently represented to the trust that the Blodgett building was structurally sound, could be lawfully used for department store purposes, and that its total property to be contributed to the tenancy in common had a value approximating 2/3 of the value of the trust's property so that a 60%–40% tenancy in common would be fair and just.

"6. On May 20, 1946, the probate court for the county of Kent and State of Michigan, authorized the trust to exchange an undivided 37% interest in the land and buildings described in paragraph 5 hereof for an undivided 63% interest in the land and buildings described in paragraph 4 hereof and in other land and buildings owned by the corporate defendant but not material to this cause. * * * Because of the structural defect hereinafter alleged, defendant's property's value did not exceed $600,000 which would create a ratio of 66–2/3 to 33–1/3. In the probate

court proceedings there was no disclosure of any structural defect in the Blodgett building. On or about May 3, 1948, by appropriate conveyances, said tenancy in common was created.

"7. On or about March 26, 1948, the trust and the corporate defendant, as lessors, executed a certain lease with a Michigan corporation engaged in retail trade, which lease covered the property of the trust and the corporate defendant described in paragraphs 4 and 5 hereof and provided, among other things,
\* \* \*

"8. In executing said lease the corporate defendant falsely represented to the tenant and to the trust that said Blodgett building was sound and usable for a large department store whereas in fact it was so defective that such use would have violated the ordinances of the city of Grand Rapids and the laws of the State of Michigan as hereinafter more fully alleged.

"9. Immediately upon taking possession the tenant found that there was a serious structural defect in the Blodgett building which had been contributed to the tenancy in common by the corporate defendant, said defect consisting of a progressive settling of the corner foundation piers of said building. The tenant thereupon gave formal written notice to the lessors that if the building was not repaired the tenant would terminate the lease and hold the lessors liable for damages. Following inspection of the defective building by architects who determined that the building was in dangerous condition and would eventually collapse, the parties obtained an estimate of the cost of repair which amounted to $110,170.

"10. On or about August 25, 1949, in consideration of an increase in the initial amount to be spent by the tenant in improvements, and a waiver of the tenant's claim as to structural defects, the lease was modified to eliminate the requirement of improvements in the event of renewal and to substantially reduce the percentage rental from that originally specified. Plaintiff was not informed of this modification and was not a party to it.

"11. Plaintiff alleges that either the immediate repair of the building or some modification of the lease and concession to the tenant was necessary to prevent the tenant from terminating the lease as it threatened to do and as it had the right to do after discovering the defective condition of the Blodgett building.

"12. Plaintiff alleges that the modification of the lease was detrimental to his interests and the interests of the other beneficiaries of the trust in that it decreased the rentals payable under the lease during the continuing existence of the trust and thereafter when fractional interests in the leased premises are transferred to the remaindermen of which plaintiff is one. Plaintiff further alleges that the loss which he and the other trust beneficiaries have suffered and will continue to suffer during the remainder of the lease because of the defect in the corporate defendant's building should be borne by the corporate defendant and its former stockholders and not by the trust beneficiaries.

"13. Plaintiff has demanded of the defendants that an adjustment be made in the percentage division of the tenancy in common, that rentals received by defendant heretofore be adjusted to the new percentages, and that future rentals be divided according to such adjusted percentages. The defendants have refused to make any adjustment whatsoever. * * *

"15. Plaintiff alleges that the corporate defendant was guilty of actual or constructive fraud in falsely representing that the Blodgett building was structurally sound and in contributing to the tenancy in common a building which was in fact structurally defective to such an extent that it could not have been lawfully used by the tenant for department store purposes without repairs which would have cost in excess of $100,000.

"16. Plaintiff alleges that since the inception of the lease of March 26, 1948, the defendants have received substantial rentals from said tenant, a portion of which should in equity be paid to the trust,

and alleges that an accounting is necessary to determine the amounts received and the amounts to be paid to the trust.

"17. Plaintiff is without an adequate remedy at law. Complete and adequate relief to the plaintiff and the other trust beneficiaries requires the adjustment of diverse rights among the trust beneficiaries and the defendants and an accounting of past and future rentals."

(The prayer follows here.)

The bill presents, for consideration and determination of equity, a typical action in personam. It alleges plaintiff's beneficial interest in the express trust identified in paragraph 2 and says that the corporate defendant's fraud as alleged has defeated or partially impaired that interest. Upon such allegations plaintiff says that he and similarly situated beneficiaries are entitled to equity's superintendence of the constructive trust as claimed to the end that such be managed as equity would have it done according to her maxims, and he comes to the ultimate fact of his pleaded right by allegation that the fraud-caused loss pointed up in the bill should, by decree for accounting and ancillary relief, be borne by the corporate defendant and its stockholders rather than the trust beneficiaries. Such is the jurisdictional essence of the bill. So viewed, it exhibits nonlocal subject matter. The chancellor was consequently right in refusing to dismiss it for above-assigned reason.

We said, by adoption, in *Long* v. *Earle,* 277 Mich 505, 523:

"A court of chancery has plenary power to affect the title to real estate beyond its jurisdiction by a sale and conveyance thereof by its master or otherwise by its decree in suits to execute trusts, to undo frauds, and to enforce contracts regarding such real estate, whenever it has acquired jurisdiction of the

persons of the parties interested therein, for the reason that equity acts through the person."

If plaintiff finally establishes the right he has pleaded, equity's grace will come to him by relief granted directly against errant defendants and indirectly against the realty *res*. The shape of that relief will be formed by the chancellor according to germane conditions and equities existing at the time decree is made—not of necessity by the prayer of the bill (19 Am Jur, Equity, § 410, p 283; *Swan* v. *Ispas,* 325 Mich 39). Indeed, the chancellor for aught we know may determine that plaintiff and his fellow beneficiaries are entitled to a decree for accounting only, or decree for compensatory damages only, rather than a direction of conveyance or reconveyance of the mentioned real estate. It may not even be possible or expedient to order realty conveyances by the time that apparently distant* day of decree arrives (19 Am Jur, Equity, § 411, p 283; 30 CJS, Equity, § 74, p 430; 1 Pomeroy's Equity Jurisprudence [5th ed], § 237e, p 438).

All these considerations unite in forming solid foundation for Judge Smith's ruling that the bill exhibits nonlocal subject matter, and they find ample support in *Noble* v. *Grandin,* 125 Mich 383; *Niemetta* v. *Teakle,* 210 Mich 590; *Reed* v. *Bird,* 239 Mich 32; *Dunnebacke* v. *Detroit, Grand Haven & Milwaukee R. Co.,* 248 Mich 450; *Long* v. *Earle,* 277 Mich 505; *Schiff* v. *Peck Drug Stores, Inc.,* 278 Mich 432; *Seaman* v. *Ironwood Amusement Corp.,* 282 Mich 258; and *Haverly* v. *Haverly,* 326 Mich 384.

Appellants have fundamentally erred in construction of plaintiff's bill by seizing upon portions of the prayer distinguished from the stating portion thereof to support claim that "It is the ownership of the real estate itself which is in issue." The

---

* This bill, filed July 27, 1954, is not even at issue this first day of March, 1956.

premises of a bill in equity—not its prayer—are determinative of the substance thereof (*Berg* v. *Berg,* 336 Mich 284; *McCoy* v. *Continental Insurance Co.,* 326 Mich 261; *Raniak* v. *Pokorney,* 198 Mich 567; 30 CJS, Equity, § 210, p 667), and this is but another way of saying that relief within scope of the bill is the final responsibility of the chancellor and that the prayer aids rather than dictates equity's decretal beneficence.

Noting again that the well-pleaded allegations of plaintiff's bill are presently accepted as true, we advert to the polar guide of Pomeroy's Equity Jurisprudence. The bill presents clear case for relief in personam under these successive precepts (3 Pomeroy [5th ed]):

"The jurisdiction, when it exists, may be exercised by granting reliefs which are peculiarly equitable, or reliefs which are wholly pecuniary, and therefore legal. In conferring these reliefs which are purely equitable, and therefore exclusive, the power of equity knows no limit. The court can always shape its remedy so as to meet the demands of justice in every case, however peculiar (p 574)."

"In administering all these remedies, pecuniary as well as equitable, the fundamental theory upon which equity acts is that of restoration,—of restoring the defrauded party primarily, and the fraudulent party as a necessary incident, to the positions which they occupied before the fraud was committed. Assuming that the transaction ought not to have taken place, the court proceeds as though it had not taken place, and returns the parties to that situation (p 578)."

"The remedy which equity gives to the defrauded person is most extensive. It reaches all those who were actually concerned in the fraud, all who directly and knowingly participated in its fruits, and all those who derive title from them voluntarily or

with notice. 'A court of equity will wrest property fraudulently acquired, not only from the perpetrator of the fraud, but, to use Lord Cottenham's language, from his children and his children's children, or, as elsewhere said, from any persons amongst whom he may have parceled out the fruits of his fraud' (p 601)."

"One of the most important effects of fraud, and most striking illustrations of the equity jurisdiction, is found in the theory of trusts arising by operation of law. When property subject to a trust is fraudulently transferred, or when one person, in fraudulent violation of his fiduciary duty, acquires property which equitably belongs to another, or when one person by his actual fraud obtains the title to property in which another is beneficially interested, equity may work out and protect the rights of the beneficial owner by regarding the property as though it were actually impressed with a trust in the hands of the one who holds the legal title, by treating such person as though he were an actual trustee, and by enforcing such trust by means of a conveyance, accounting, payment, injunction, and other appropriate remedies. There is no other effect of fraud more remarkable, and none which exhibits more clearly the power of courts of equity to deal with the substantial realities under the appearance of external forms (p 618)."

*Second:* Appellants refer us to that portion of the same statute (CLS 1954, § 610.1 [Stat Ann 1953 Cum Supp § 27.641]) reading:

"And where it is necessary to file an information or bill in chancery, either to compel the specific performance of contract, cancellation of patents from the State, quiet title, or otherwise to affect real estate and when such real estate may be situated in different counties, it shall be competent to file such information or bill on the equity side of the circuit court in any 1 of said counties in which a part of

said real estate may be situated; and such court shall have complete jurisdiction in the premises as fully and effectually as if the whole of such estate were situate in the county in which suit may be commenced,"

and allege on separate strength thereof that this bill must be filed if at all in the county of realty locus. As to this point Judge Smith said:

"The court has considered defendants' further argument that CLS 1954, § 610.1 (Stat Ann 1953 Cum Supp § 27.641), provides that in actions affecting real estate located in more than 1 county suit may be brought in any county where part of the real estate is located. The court is of the opinion that this portion of the statute does not modify the previous portion, but merely takes care of the situation where real estate is located in several counties."

We agree with the judge's conclusion that the quoted provision does not dictate venue of suits in equity that are brought for accounting and ancillary relief under authority of rules previously considered in this opinion, and hold that it was intended as a guide for cases where realty subject matter is local and lies partly in one county and partly in another.

*Third:* Appellants insist, by topical heading:

"The courts of Kent county have exclusive jurisdiction of the William G. Herpolsheimer testamentary trust which has been administered at all times under the jurisdiction of the Kent county probate court."

Under such heading, and on authority of *Thaw* v. *Detroit Trust Company,* 307 Mich 6, appellants say that the situs of the mentioned trust is in Kent county and that the equity court of that county is exclusively possessed of jurisdiction. Plaintiff says, in answer, that the mentioned trust has been terminated. Conflicting affidavits, sworn to respectively by opposing

counsel, appear in the record. We need not decide the question of law posed by the affidavits—whether the trust terminated at death of Ralph C. Herpolsheimer—it being our view that the point is irrelevant considering absence of charge, in the bill, against the William G. Herpolsheimer testamentary trust or its trustees. No claim of maladministration of that trust is made. If plaintiff prevails on strength of his bill, it will be at no expense to the William G. Herpolsheimer trust or its trustees. The decree in such case will not offend or infringe the statutory jurisdiction (if not already terminated) of the Kent county probate court. Actually, such a result would benefit the William G. Herpolsheimer trust and each *cestui* thereof.

The *Thaw Case* is not opposed. All trust beneficiaries in that case were nonresidents of Michigan. Their bill was held properly filed in the St. Clair circuit, where the probate court originally assumed and yet retained statutory jurisdiction over the testamentary trust. The bill alleged maladministration by the defendant trustee and demanded its removal together with an accounting. We have no such situation here—neither do we accept the *Thaw Case* as authority for the proposition that equity suits affecting testamentary trusts must be brought in the county of probate jurisdiction. The statute first quoted in this opinion—not the probate code—decides equity's venue. We therefore hold that this particular objection to Ottawa's jurisdiction is without merit.

We have not overlooked the persuasive arguments of convenience that are set forth in appellants' respective briefs. It may well be that the net sum of pro and con debate addressed to the doctrine *forum non conveniens* (*cf., Silverstone* v. *London Assurance Corporation,* 176 Mich 525) would, if submitted, lead to venue-transfer of this case from Ottawa to

Kent. Such considerations are nevertheless inconsequential at present sitting. If judicial digestion thereof is desired, they should be served to the chancellor on the platter of motion for change of venue—not motion to dismiss.

The order denying motion to dismiss is affirmed. Costs to appellee.

Smith, Reid, Kelly, and Carr, JJ., concurred with Black, J.

Dethmers, C. J., and Sharpe and Boyles, JJ., concurred in the result.