### KRONINGER v. ANAST.

1. **Municipal Corporations—Nonconforming Multiple Dwelling.**

   A city may stop the use of a multiple dwelling that does not conform to the housing law by declining to exercise its discretion to continue the nonconforming use (CL 1948, §§ 125.404, 125.450, 125.451).

2. **Same—Discretion of Officers—Statutes.**

   The court may not substitute its discretion for that vested by statute in a city's officials.

3. **Fraud—Ignorance of Falsity of Statements Relied Upon.**

   One who obtains property of another who relies upon untrue statements though they were made in ignorance of their falsity, must be held responsible as for a legal fraud.

4. **Vendor and Purchaser—Rescission of Land Contract—Multiple Dwelling—Discretion of Officers.**

   Defendants' statements that 3-story wooden multiple dwelling property sold plaintiffs could be used as a 7-family apartment house, though innocently made, warranted rescission of the land contract, where city elected not to exercise its discretion to permit the use of the property for 7-family occupancy, or to permit the occupancy of the third floor of the property (CL 1948, §§ 125.404, 125.450, 125.451).

Appeal from Oakland; Dondero (Stanton G.), J. Submitted June 6, 1962. (Docket No. 8, Calendar No. 49,470.) Decided September 10, 1962.

Bill by Richard P. Kroninger and Lucille Kroninger against Gregory Anast and Vera Anast for rescission of contract to purchase real property and for accounting and restitution. City of Pontiac add-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] Power to terminate lawful nonconforming use existing when zoning ordinance was passed, after use has been permitted to continue. 42 ALR2d 1146.

[3] 23 Am Jur, Fraud and Deceit § 122 et seq.

[4] 55 Am Jur, Vendor and Purchaser § 593.

ed as party defendant to promote final determination of related controversies. Cross bill by defendants Anast against the city to establish right to continued use of third floor property for multiple dwelling purposes. Decree for plaintiffs. Defendants Anast appeal. Affirmed.

*Howlett, Hartman & Beier* (*James L. Howlett,* of counsel), for plaintiffs.

*Leon H. Hubbard,* for defendants Anast.

*William A. Ewart,* for defendant City of Pontiac.

BLACK, J. The chancellor's opinion is a model of comprehensive brevity. It states the essential facts fairly and presents all issues as follows:

"This is a suit by contract vendees for rescission on the ground that they are unable to use the real estate involved for the purpose and to the extent that it was represented they could use same by the defendant vendors. The defense is that the building involved has been used as a 7-family apartment down through the years, and that such use can be continued as a nonconforming use under the zoning code of the city of Pontiac. Said city was brought in as a party and pleaded not only the zoning code, but the State housing law as well.

"On trial the proofs abundantly show, and the court so finds, that the use of the building as a 7-family apartment antedates the adoption of the zoning code of the city, and is therefore a permissive use as nonconforming under that code.

"Defendants freely admit that they represented to the plaintiffs that the property could be used as a 7-family apartment. All of the testimony adduced at trial bears this out. Defendants had no reason to believe otherwise since they and their predecessors in title had used the building as a 7-family apartment down through the years without any interference by the city officials or otherwise.

"Proceeding on the theory that estoppel cannot run against the city, the crux of this case is whether or not the city can stop the use as represented under the housing law. A perusal of that law, PA 1917, No 167, as amended, indicates that the city can stop the continued use of the building as a 7-family apartment. Section 4 of the act, being CL 1948, § 125.404 (Stat Ann 1958 Rev § 5.2774), provides as follows:

" 'If any dwelling, or any part thereof, is occupied by more families than provided in this act, or is erected, altered, or occupied contrary to law, such dwelling shall be deemed an unlawful structure, and the health officer or such other appropriate public official as the mayor may designate, may cause such dwelling to be vacated. And such dwelling shall not again be occupied until it, or its occupation as the case may be, has been made to conform to the law.'

"CL 1948, § 125.450 (Stat Ann 1958 Rev § 5.2821), limits the number of apartments and the occupancy of a wooden multiple dwelling. CL 1948, § 125.451 (Stat Ann 1958 Rev § 5.2823), then provides as follows:

" 'No existing wooden building shall be so altered, or have its occupancy so changed as to conflict with provisions of section 50 (CL 1948, § 125.450 [Stat Ann 1958 Rev § 5.2821]): Provided, however, that the enforcing official may permit the occupancy of the third floor of an existing dwelling by not more than 2 families if of class "a," or 6 sleeping rooms, if of class "b." '

"And the statute then sets up standards within which the city officials may exercise this discretion.

"The city of Pontiac has elected not to exercise its discretion to permit the use of the property for 7-family occupancy, or to permit occupancy of the third floor of the property involved. The court cannot substitute its discretion for that of the city officials. Under these circumstances, the representations of the defendants, which were relied on by the plaintiffs, were false, even though innocently made. Defendants must be held responsible for their

untrue statements even though made in ignorance of their falsity—14 Mich 109.* These representations as to the use that could be made of the building involved in the contract were of the essence of the contract and were of such a character that it cannot be said that the minds of the parties met. This renders the contract between the parties void and rescission must be granted.

"An accounting between the parties will be ordered to determine the amount of money due to either party.

"A decree may enter accordingly."

The only discussible question is whether the innocent yet false representation of defendants Anast, made by them in the inducement, constituted actionable fraud. Citing *McIntyre* v. *Lyon*, 325 Mich 167, and the quotation therein by *Candler* v. *Heigho*, 208 Mich 115, 121, of the general rule stated in 20 Cyc, p 13, defendants Anast point to the chancellor's finding that they had no reason to believe the representation they had made was false.

The point is not well taken, since the question considered in both the *McIntyre* and *Candler Cases* was whether the respective plaintiffs actually relied upon the representations they said were actionable. Here there is no question on that score. These plaintiffs did rely upon the representation of defendants Anast "that the property could be used as a 7-family apartment" and, on strength thereof, proceeded to purchase what defendants Anast wanted to sell. The representation even though honestly believed by defendants Anast made out a case of fraud warranting rescission.

The controlling rule came to initial consideration and adoption when *Converse* v. *Blumrich*, 14 Mich 109 (90 Am Dec 230), was decided. Mr. Justice

---

* *Converse* v. *Blumrich, post.*—REPORTER.

COOLEY, writing for the unanimous Court, concluded (p 123):

"If one obtains the property of another, by means of untrue statements, though in ignorance of their falsity, he must be held responsible as for a legal fraud (citing cases)."

The rule has been followed ever since. See extended discussion and citation appearing in *Aldrich v. Scribner,* 154 Mich 23 (18 LRA NS 379), and *Rosenberg* v. *Cyrowski,* 227 Mich 508; also *Essenburg* v. *Russell,* 346 Mich 319. In the *Aldrich Case* this rule, citing *Converse* v. *Blumrich* and other like cases, was quoted with approval (p 26):

"But an equally careful examination of the cases adjudicated in this State satisfies me that the doctrine is settled here, by a long line of cases, that if there was in fact a misrepresentation, though made innocently, and its deceptive influence was effective, the consequences to the plaintiff being as serious as though it had proceeded from a vicious purpose, he would have a right of action for the damages caused thereby either at law or in equity."

Decree affirmed. Costs to plaintiffs.

CARR, C. J., and DETHMERS, KELLY, KAVANAGH, OTIS M. SMITH, and ADAMS, JJ., concurred with BLACK, J.

SOURIS, J. (*concurring*). I concur in affirmance, the parties to the land contract having made a mutual mistake concerning the permissible use of the property. *Harris* v. *Axline,* 323 Mich 585, at p 589.