LIVINGSTON v KROWN CHEMICAL MANUFACTURING, INC

OPINION OF THE COURT

1. SPECIFIC PERFORMANCE—DAMAGES—DISCRETION—PRAYER FOR RE-
   LIEF—EQUITY—CONTRACTS.

   A court of equity has considerable discretion in the awarding of
   damages even though specific performance is denied, the final
   relief within the scope of an equitable action is the responsibil-
   ity of the court, and the prayers for relief in the action are
   actually an aid rather than a bar to the final decision which
   should be agreeable to equity and good conscience; therefore,
   the court, in an action by the sellers for specific performance of
   a contract for sale of shares of stock in a corporation and for
   general relief, having found that a valid contract existed, was
   justified in shaping its remedy in a way that would best meet
   the demands of justice by entering a judgment in favor of the
   sellers for the agreed upon price of the stock.

2. CONTRACTS—RESCISSION—DELAY—RELIEF—FRAUD—TENDER—RE-
   PAYMENT.

   A party claiming a right to rescission is required to assert his
   right to rescind without any unnecessary delay, otherwise he
   will be denied the relief; where it is claimed that a contract
   was induced by fraud and misrepresentation, upon the discov-
   ery of the fraud, the claimant must seasonably assert rescis-
   sion, tender back what he has received, and demand repayment
   of the purchase price.

DISSENT BY V. J. BRENNAN, P. J.

3. SPECIFIC PERFORMANCE—CONTRACTS—FRAUD—MISREPRESENTATION.
   *Specific performance will not be allowed where the contract was
   procured by fraud and misrepresentation.*

REFERENCES FOR POINTS IN HEADNOTES
[1] 27 Am Jur 2d, Equity § 102 *et seq.*
[2, 4, 5] 17 Am Jur 2d, Contracts § 501 *et seq.*
[3] 71 Am Jur 2d, Specific Performance § 45.

4. Contracts—Rescission—Fraud—Misrepresentation.

   *Rescission is a proper remedy where a party was induced to enter into a contract by fraud and misrepresentation.*

5. Contracts—Rescission—Timeliness.

   *A purchaser of shares of stock in a corporation and of the entire business acted timely in asserting rescission where it made its contract to purchase in December 1967 and asserted its claim for rescission as a counterclaim to a suit for specific performance filed in December 1968 and, although aware of some discrepancy in the sellers' representations, was concerned with attempting to make the venture succeed rather than seeking immediate rescission, for which it should not be penalized.*

Appeal from Wayne, Edward F. Bell, J. Submitted Division 1 February 13, 1973, at Detroit. (Docket No. 11870.) Decided October 30, 1973. Leave to appeal granted, 391 Mich —.

Complaint by Jack K. Livingston and others against Krown Chemical Manufacturing, Inc., and Leonard Marsano and Lillian R. Marsano for specific performance of a contract and general relief. Specific performance denied but damages awarded to plaintiffs. Defendant Krown Chemical appeals. Affirmed.

*Alan A. May,* for plaintiff.

*Morris H. Shillman, P. C.,* for defendant Krown Chemical Manufacturing, Inc.

*John H. Norton,* for defendants Leonard Marsano and Lillian R. Marsano.

Before: V. J. Brennan, P. J., and Holbrook and Van Valkenburg,* JJ.

Van Valkenburg, J. This litigation involves many ramifications, but on appeal we are concerned primarily with the legality of a judgment in the amount of $46,000 entered in behalf of the

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

plaintiffs against the defendant, Krown Chemical Manufacturing, Inc.

Marsano, Inc., a Michigan corporation, was engaged mainly in the manufacturing and selling of a patented electric product known as "Beauty Mate Comb". A majority of the stock, 51% to be exact, was held by Leonard and Lillian Marsano. The plaintiffs, being minority stockholders, owned 46%. For reasons which are not immediately apparent from the record, the stockholders of Marsano, Inc., decided to sell the entire business. In furtherance of that plan, a rather provocative advertisement, which did not contain a candid statement of the true facts, was placed in the Wall Street Journal.

The owners of the defendant corporation, Albert Applebaum and Richard Gorman, as a result of having observed the advertisement, entered into negotiations for the purchase of this business. A contract was entered into on December 22, 1967, whereby Krown agreed to pay $10 per share for all of the Marsano, Inc., stock. The Marsanos received $31,000 cash and 2,000 shares of the stock of the Krown Corporation which were placed in escrow. The plaintiffs were to receive $46,000, to be paid within 120 days following January 3, 1968, and their shares were placed in escrow pending the delivery of that sum.

Gorman took over as president and operated the business thereafter. Applebaum, being the more experienced of the two, remained as an interested party. The business was not a success financially, debts increased, and the sales did not materialize as expected, although 12,945 combs were sold from the inventory between December 23, 1967, and December 23, 1970.

The plaintiffs filed this suit on December 17,

1968, praying for specific performance of the contract and general relief when it became apparent that the agreed price of $46,000 would not be forthcoming. The trial court, after hearing the evidence, found that there were numerous acts of overreaching on the part of the plaintiffs. The court, therefore, refused to grant the specific performance requested by plaintiffs; however, since the court also denied Krown's counterclaim for rescission by reason of Krown's failure to demand rescission in a timely fashion, the plaintiffs were entitled to the benefit of their bargain, $46,000.

The defendant has presented two issues for our consideration. First, the contention is made that the court erred in allowing this judgment for money damages when the plaintiffs primarily prayed for specific performance. Our examination of the complaint discloses that it is composed of three counts and in each of them we find the following clause: "That the plaintiffs have such other relief and such further relief in the premises as shall be agreeable to equity and good conscience".

We would be the first to admit that there is some confusion in the law as to whether or not damages can be awarded when specific performance has been denied. See 81 CJS, Specific Performance, § 163, pp 780–781; 49 Am Jur, Specific Performance, § 173, pp 196–197; *Farrell v Hannan Real Estate Exchange,* 251 Mich 669; 232 NW 209 (1930). However, the majority opinion in Michigan appears to be that a court of equity has considerable discretion in the awarding of damages, even though specific performance is denied, as illustrated in *Michigan Sugar Co v Falkenhagen,* 243 Mich 698, 702; 220 NW 760, 762 (1928):

"When the bill was filed the court of equity had

jurisdiction to decree specific performance, or, in the exercise of a discretion guided by circumstances, to award damages in lieu thereof."

Or as stated in *Herpolsheimer v A B Herpolsheimer Realty Co,* 344 Mich 657, 666; 75 NW2d 333, 338 (1956):

" 'The jurisdiction, when it exists, may be exercised by granting reliefs which are peculiarly equitable, or reliefs which are wholly pecuniary, and therefore legal. In conferring these reliefs which are purely equitable, and therefore exclusive, the power of equity knows no limit. The court can always shape its remedy so as to meet the demands of justice in every case, however peculiar.' "

Further, our Supreme Court has held that the final relief within the scope of the bill in equity is the responsibility of the court and that the prayers are actually an aid rather than a bar to the final decision, which should be agreeable to equity and good conscience. *Carlson v Williams,* 348 Mich 165; 82 NW2d 483 (1957); *Thompson v Enz,* 385 Mich 103; 188 NW2d 579 (1971).

Therefore, the court, having found that a valid contract existed, was justified in shaping its remedy in a way that would best meet the demands of justice.

The second, and perhaps more important issue, deals with the question of rescission of the contract.

There was some evidence that an attempt was made to tender back the stock to the attorney for the plaintiffs, but the court found that no written offer was ever made. Even if true, it would be immaterial as the owners of the defendant company continued to operate the business. Gorman himself testified that all his efforts in 1968, 1969,

and half of 1970 were devoted to Marsano, Inc., and that overseas markets had been established in Mexico, Canada, and South Africa. Applebaum testified in a similar vein and admitted that they were attempting to put the company back on its feet.

The Supreme Court in *Wall v Zynda,* 283 Mich 260, 265; 278 NW 66, 68; 114 ALR 1521 (1938), stated the rule with respect to the necessity to promptly disaffirm as follows:

"Not only is rescission the opposite of covenant in the character of the relief sought, but of necessity the results which follow the respective actions are opposite or at least distinctly different. Rescission wholly abrogates the contract and restores the parties to a *status quo;* but covenant perpetuates the contract and affords the moving litigant his right thereunder. Because of this difference courts have uniformly required a plaintiff in rescission to assert his right to rescind without any unnecessary delay. Otherwise he will be denied the relief. In many cases the right to have rescission has been held to have been lost by laches within a much shorter period than the six-year statute of limitations. It is obvious that a prolonged period of time within which to bring an action for rescission would be quite incompatible with the character of the relief sought. A party asking restoration of the *status quo* for obvious reasons should be required to move promptly. Equity will not permit one possessed of a right of rescission to delay unduly in the exercise of that right and while so doing speculate on the outcome of the transaction at the risk of his adversary."

Or as stated in *Gloeser v Moore,* 283 Mich 425, 431; 278 NW 72, 74 (1938):

"However, in rescission there are certain prerequisites to the bringing of such an action. Upon the discovery of the fraud he must seasonably assert such rescis-

sion, tender back what he has received, and demand repayment of the purchase price." (Citations omitted.)

Also see *Mesh v Citrin,* 299 Mich 527; 300 NW 870 (1941).

We find that the relief fashioned by the trial court was just and proper under the circumstances. There was ample evidence that plaintiffs engaged, along with defendant Marsano, in numerous improper. acts with respect to the sale of Marsano, Inc. The record also supports the trial court's finding that defendant Krown Corporation waited too long to attempt to rescind the contract. Under these circumstances the trial court quite properly granted damages in the amount of the agreed upon contract price.

Affirmed. Costs to plaintiffs.

HOLBROOK, J., concurred.

V. J. BRENNAN, P. J. *(dissenting).* The defendant, Krown Chemical Manufacturing, Inc., appeals from a decision of the Circuit Court for the County of Wayne awarding the plaintiffs a judgment in the amount of $46,000.

The present controversy arises out of the sale of the stock and assets of Marsano, Inc., to the defendant corporation. The owners of Krown were apprised of the fact that Marsano, Inc., was for sale through an advertisement placed in the Wall Street Journal, with the knowledge and consent of the directors, officers, and shareholders of Marsano, Inc., by Mr. Leonard Marsano, general manager of the corporation. Mr. Marsano was authorized by the other shareholders to advertise and sell the corporation.

The advertisement represented that a "corporation with highly profitable one-item patented new

Beauty electric comb" was for sale. The advertisement further represented that the corporation had liabilities of only $900. Mr. Albert Applebaum and Mr. Richard Gorman, owners of Krown Chemical Manufacturing, Inc., contacted Mr. Marsano and several meetings preliminary to the acquisition of the company ensued. At one such meeting a financial statement of Marsano, Inc., was presented to Mr. Applebaum and Mr. Gorman which listed accounts payable to be $830.45.

After these preliminary meetings were concluded, Mr. Applebaum arranged to have his accountant, Mr. Harvey Cantor, inspect the books and records of Marsano, Inc. However, the records were not made available to him. Mr. Marsano explained to Mr. Gorman and Mr. Applebaum that the records were not produced because they were with the company's bookkeeping service, but he assured both men that the financial statement accurately represented the condition of the company.

The defendant corporation, through Mr. Gorman and Mr. Applebaum, finally agreed to purchase Mr. Marsano's majority holding of Marsano, Inc., for $31,000 and 2,000 shares of Krown stock. At this time a meeting was scheduled for December 22, 1967, to arrange the terms under which defendant would acquire the shares of the minority shareholders, the plaintiffs herein. A meeting was held on December 20 or 21, 1967, at which the sales agreement and a tentative clause for the purchase of the minority shareholders' stock was drawn up. At the December 22, 1967 meeting the clause relating to the purchase and sale of the shares of the minority shareholders was altered, at the suggestion of the minority shareholders and in the absence of Mr. Gorman and Mr. Applebaum,

by the addition of the following clause relating to the return of their stock if the sale was not consummated:

"And such return shall not effect or diminish the legal liability of purchaser for failure to consummate the purchase under the terms hereof."

Mr. Applebaum represented the defendant corporation at the December 22, 1967 meeting. He agreed to purchase the minority's 4,600 shares at the price of $10 per share only after being assured by Mr. Marsano that the necessary $46,000 could be obtained through the profits realized by the sale of the comb to Japanese businesses. Mr. Marsano assured Mr. Applebaum that he would be able to get the business from Japan for them. To show his good faith, Mr. Marsano executed an escrow agreement whereby he deposited his 2,000 shares of Krown stock in the escrow to be returned only at the direction of the Krown president upon satisfactory completion by Mr. Marsano of securing the necessary Japanese accounts.

Subsequent to the execution of the sales agreement Mr. Gorman and Mr. Applebaum learned that the patent to the comb did not belong to Marsano, Inc., but rather belonged to Mr. Marsano, who refused to assign it. They also learned that the company had a potential liability of over $12,000 due to an indebtedness earlier incurred. Mr. Marsano did not secure the Japanese business necessary to assure that the minority shareholders could be paid from profits. The defendant corporation, therefore, failed to pay the amount owing to the minority shareholders under the sales agreement within the agreed time. The minority shareholders thereupon instituted a suit against the defendant corporation seeking specific performance

of the sales agreement and "such other relief and such further relief in the premises as shall be agreeable to equity and good conscience". The defendant filed a counterclaim seeking rescission of the contract because of alleged misrepresentations.

The lower court, having found numerous acts of fraud and misrepresentation, refused to grant the specific performance requested. The lower court did, however, grant judgment in favor of the plaintiffs in the amount of $46,000 and denied defendant corporation's crossbill for rescission for failure to speedily assert the remedy.

The defendant corporation contends that once the trial court refused to grant specific performance it had no right to award damages. I agree. It is a well settled rule of law that specific performance will not be allowed where the contract was procured by fraud and misrepresentation. *Ekelman v Murray,* 369 Mich 43; 118 NW2d 959 (1963); *Lamhoff v Daniel,* 256 Mich 333; 239 NW 334 (1931); 5A Corbin, Contracts, §§ 1167–1168. It is also well settled that rescission is a proper remedy where a party was induced to enter into a contract by fraud and misrepresentation. *Kroninger v Anast,* 367 Mich 478; 116 NW2d 863 (1962); *Dillon v Yankee,* 346 Mich 491; 78 NW2d 131 (1956); *Bologa v Pittsillos,* 308 Mich 182; 13 NW2d 253 (1944). It is beyond dispute, and the record in the case at bar amply demonstrates, that the plaintiffs and their authorized representative, Marsano, made numerous misrepresentations upon which the defendant corporation relied in entering into this contract. Under these circumstances I would hold that it was error to deny defendant corporation's counterclaim for rescission of the contract and to award contract damages to the plaintiffs. I

cannot conceive of any good reason, in law or equity, that would allow plaintiffs relief.

The trial judge and my learned colleagues seize upon the rule that a person must act promptly in asserting rescission. While I recognize the existence of such a rule, I do not agree that the defendant corporation did not act timely under the facts of this case. The defendant-appellant, although aware of some discrepancy in plaintiffs' representations, was concerned with attempting to make the venture succeed rather than seeking immediate rescission. For this it should not be penalized.

I would reverse the judgment in favor of plaintiffs and reverse the order denying rescission.