W. C. STERLING & SON CO. *v.* WATSON & BENNETT CO.

CONTRACTS—EVIDENCE—ACCEPTANCE.

> The question being whether or not a contract exists and the evidence conflicting, a question for the jury is presented: and plaintiff, who forwarded to defendant a contract calling for a quantity of poles, which defendant signed, but added after the quantity indicated the words "more or less," which contract plaintiff later signed, striking out the word "less," did not thereby accept the proposal or do more than make a series of offers.

Error to Chippewa; O'Brien, J., presiding. Submitted June 26, 1916. (Docket No. 133.) Decided September 26, 1916.

Assumpsit by W. C. Sterling & Son Company against Watson & Bennett Company for money had and received. Judgment for plaintiff on a directed verdict. Defendant brings error. Affirmed.

*Davidson & Hudson,* for appellant.

*Warner & Sullivan,* for appellee.

W. C. Sterling & Son Company, plaintiff, does business at Monroe, Mich. Watson & Bennett Company, the defendant, does business at De Tour, Mich. Both companies are in the lumber business.

In 1914 Mr. Sayers, an agent of plaintiff, had a conversation with Mr. Watson, representing the defendant, regarding a proposed contract with defendant, and later Mr. Johnson, also an agent of plaintiff, sent Mr. Sayers a draft of a contract to be signed by defendant which called for 20 M. cedar ties or more and 4 M. or more poles. Mr. Watson, acting for defendant, changed this to 1 M. poles, signed it, and returned it. Mr. Sayers then sent back another contract calling for 20 M. ties and 4 M. poles, which contract, in the presence of Mr. Sayers, Mr. Watson changed to read: "4 M. poles, more or less." This contract Mr. Sayers agreed to submit to his company for signature. Later Mr. Watson saw this contract after he had signed it, but the word "less" had been stricken out and the word "more" left in. It was, however, never delivered to Mr. Watson in its corrected form, and he never did, and, according to his testimony, never would have agreed to it with the word "less" stricken out. While the parties were thus seeking to agree upon the details of the contract, plaintiffs advanced the defendants the sum of $6,000, and defendants delivered to plaintiffs a cargo of forest products worth $455.51 less than the amount advanced. Plaintiffs are now seeking to recover the sum advanced by them in excess of the value of the cargo which they received.

It is the contention of plaintiff that, as the contract was sent back and forth between the parties with changes made every time which were not assented to, the whole transaction amounts to no more than a series

of offers, none of which were accepted in terms, and that no contract was, in fact, ever entered into between the parties, although both parties acted under the assumption that a valid contract subsisted; the plaintiff believing that it was entitled to receive 4 M. or more poles, whereas the defendant believed that it was to furnish 4 M. more or less.

Defendant set up a claim for recoupment upon the theory that there was a subsisting contract, and that plaintiff had breached it by refusal to receive the balance of the timber provided for in the various drafts thereof, and that the defendant had been consequently injured in an amount upwards of $3,000.

The trial court directed a verdict for the plaintiff for the sum of $455.51, and interest, and held that defendant's claim for recoupment was abortive, for the reason that there was no evidence tending to show that a valid contract had been entered into between the parties.

BROOKE, J. (*after stating the facts*). Defendant has brought the case to this court by writ of error, claiming that the court erred in failing to submit the same to the jury for the determination of the following questions:

(*a*) Was a contract made?
(*b*) If so, what was the contract?
(*c*) Was the contract broken by plaintiff?
(*d*) If so, what damage did defendant suffer as a result of such breach?

While it is admitted that a meeting of minds upon all essential points is necessary to constitute a valid contract, and, further, that it is the province of the court to construe a document and determine whether or not a valid contract exists, it is still contended by appellant that, where the question is whether or not a contract exists, and where the evidence is conflicting,

it is a question for the determination of the jury, and not of the court. Many authorities are cited supporting this proposition, and there can be no doubt of its soundness. The question still remains, however, whether the court erred in determining that under the undisputed testimony no valid contract was shown.

The evidence of Thomas H. Watson, the president of the defendant company, it seems to us, should set at rest the claim of defendant that a valid contract subsisted between the parties. We quote a portion of his testimony upon cross-examination as follows:

"*Q.* After you made your first communications with Mr. Sayers, the written contract was submitted to you for your signature, wasn't it?

"*A.* Yes, sir.

"*Q.* That written contract calls for 20,000 ties and 4,000 poles?

"*A.* Yes, sir.

"*Q.* That was the first one?

"*A.* That is the first one.

"*Q.* You didn't want to agree to sell 4,000 poles; so you changed the 4,000 to 1,000?

"*A.* Yes, sir.

"*Q.* And returned the contract with that change in it to whom?

"*A.* To Mr. Sayers.

"*Q.* Then that came back to you afterwards with the 1,000 changed back to 4,000?

"*A.* No, sir; it didn't come back. It was a new one came back.

"*Q.* Well, that one never came back, then?

"*A.* No.

"*Q.* So that was not a contract; that is, the first contract that you had changed never came back to you afterward?

"*A.* No; it was supposed to be canceled.

"*Q.* It was supposed to be canceled? Well, I guess that is right. I guess it was canceled by the subsequent proceedings, anyway. So another contract came back to you with 20,000 ties and 4,000 poles again?

"*A.* Yes, sir.

"*Q.* Now, that was the contract about which you and Mr. Sayers had the conversation which you detail in which you told him you didn't have 4,000 poles and couldn't agree to deliver 4,000 poles?

"*A.* I told Mr. Sayers it was getting late in the season, and I might not be able to get 4,000 poles.

"*Q.* And then you and Mr. Sayers, in the presence of the bookkeeper, changed the contract again?

"*A.* At least the bookkeeper did, in the presence of Mr. Sayers and myself.

"*Q.* At any rate, it was changed and at your suggestion?

"*A.* At Mr. Sayers' suggestion.

"*Q.* Well, it was upon your refusal to enter into a contract for 4,000 poles?

"*A.* Yes, sir.

"*Q.* So the contract was then changed to read '4,000 more or less'?

"*A.* Yes, sir.

"*Q.* And Mr. Sayers took both copies?

"*A.* Yes, sir.

"*Q.* You had signed both copies?

"*A.* Yes, sir.

"*Q.* And he at last said that he would send them in to the company for approval?

"*A.* Yes, sir.

"*Q.* They didn't bear the company's signature at that time?

"*A.* No, sir.

"*Q.* Well, now, did you afterwards see those same contracts again?

"*A.* Yes, sir.

"*Q.* And they had been changed again?

"*A.* Yes, sir.

"*Q.* And 'more or less' been stricken out and just 'more' left in?

"*A.* 'More' left in.

"*Q.* But this last contract was not delivered to you, as I understood, that is, the one where 'less' had been stricken out?

"*A.* No.

"*Q.* That change had been made after you had signed it?

"*A.* Yes, sir.

"*Q.* And without your consent?

"*A.* Yes, sir.

"*Q.* You never consented to that change?

"*A.* Not that I know of.

"*Q.* You didn't intend to consent to it, anyway, and you haven't consented to it yet?

"*A.* I think not.

"*Q.* Well, you haven't done it knowingly, anyway?

"*A.* No, sir.

"*Q.* And you say that you never received any contract signed by the Sterling & Son Company, and by yourself, in which you agreed to furnish 4,000 or more poles?

"*A.* No.

"*Q.* You would not agree to that?

"*A.* No, sir.

"*Q.* And if you had received a contract which had been changed after you signed it in that way, you would not have accepted it?

"*A.* No, sir."

This testimony was uncontradicted, and, based upon it, the court's determination as to the matter of defendant's set-off and recoupment was correct.

"A court cannot  *  *  *  submit to a jury facts on which the testimony is all one way." *McGrath* v. *Railroad,* 57 Mich. 555 (24 N. W. 854) ; *Hunt* v. *Order of Chosen Friends,* 64 Mich. 671 (31 N. W. 576, 8 Am. St. Rep. 855).

The case of *Johnson* v. *Surety Co.,* 187 Mich. 454 (153 N. W. 788), is easily distinguishable from the case at bar. There we held there was a "grumbling assent" to the first offer of contribution, and that all requests to modify or change the offer did not have the effect of rejecting the offer. There is no claim in the case at bar that there was a subsequent acceptance. Defendant's president, Mr. Watson, states that he never agreed to sell 4 M. poles, that he never would agree to sell 4 M., and that, if he had received a contract calling for 4 M., he would not have accepted it.

It is clear that plaintiff believed the defendant intended to sell it 4M. poles, and sent a contract calling for 4 M., at the same time having advanced $4,000 in money upon the basis of a contract for 4 M. poles, and that under such circumstances it would not accept a contract for 1 M. poles.

We agree with the contention of the plaintiff that the conduct of the parties in the premises amounted to no more than a series of offers, no one of which was assented to in its essential terms by the other party.

There appears to have been no dispute between the parties as to the amount of money advanced by the plaintiff and the value of the timber furnished by defendant to plaintiff, and that, so far as performed, the dealings between the parties left a balance due the plaintiff from defendant in the amount represented in the instructed verdict.

The judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and PERSON, JJ., concurred.