INTERNATIONAL TRANSPORTATION ASS'N *v.* BYLENGA.

1. CONTRACTS—MEETING OF MINDS NECESSARY.
   Meeting of the minds of the parties upon all essential points is necessary to constitute valid contract.

2. SAME—FAILURE TO READ NO DEFENSE.
   One who signs a contract will not be heard to say, when enforcement is sought, that he did not read it, or that he supposed it was different in its terms.

3. SAME—WHEN NEGLECT TO READ INDUCED BY FRAUD RULE NOT APPLICABLE. ·
   General rule that one who signs a contract will not be heard to say that he did not read it is not applicable where neglect to read is not due to carelessness alone, but was induced by some stratagem, trick, or artifice on the part of the one seeking to enforce the contract.

4. SAME—FRAUD.
   Where plaintiff sent to defendants a communication containing a clipping descriptive of defendants' business, asking permission to print same in its publication, and no reference to charge therefor was made in the letter proper, but the offer to print for charge was made in upper right-hand corner of

Ignorance of the contents of a contract due to failure to read it affords no ground for relief therefrom, see annotation in 6 L. R. A. (N. S.) 463; L. R. A. 1917F, 637.

sheet to which clipping was attached, which defendants' manager failed to read, his signature thereto was obtained by fraud, and no valid contract resulted.

Case-made from Kent; Brown (William B.), J. Submitted January 23, 1931. (Docket No. 164, Calendar No. 35,477.)  Decided June 1, 1931.

Assumpsit by Publication Division of the International Transportation Association, Inc., against Cornelius Bylenga, Sr., and others, copartners trading as Star Transfer Line, in justice's court on an advertising contract.  Judgment for defendants. Plaintiff appealed to circuit court.  Judgment for defendants.  Plaintiff reviews by case-made.  Affirmed.

*Boltwood & Boltwood* (*Francis L. Williams,* of counsel), for plaintiff.

*Irving H. Smith,* for defendants.

SHARPE, J.  On August 28, 1926, defendants received a letter from plaintiff, reading as follows:

"We are now engaged in compiling the next issue of our Railroads and Steamships Manual.  In future issues we propose to list the warehouses of the world.

"We are enclosing a clipping regarding your activity which we solicit authority to rewrite to conform with our style and method of presentation, publishing the same in future issues of the warehouse section of this reference work should you accept our offer for such special representation.  In connection please make any necessary marginal corrections or additions desired and return to us promptly.  Thanks in advance."

Enclosed therewith was a sheet of paper of ordinary letter size, made up as follows: In the upper left-hand corner is a picture or outline, about two inches in width and three inches in length, of the book plaintiff proposed to publish, entitled, "Directory of Railroads and Steamships also Warehouse Service." In the opposite corner, boxed in by a black line, is printed in small type, occupying the same space as the picture of the book, an offer to publish defendants' advertisement in the directory for the years 1927 and 1928 for $50 per year. Between these two designs, which slant towards the center of the sheet, there is printed in large letters at the top, "Directory of Railroads and Steamships also Warehouse Service," and in smaller type an additional reference to plaintiff's business. Below, and where a communication on a letterhead would usually begin, is printed:

"The undersigned accepts your offer to prepare and publish a revised description of our activity in the DIRECTORY OF RAILWAYS AND STEAMSHIPS, ALSO WAREHOUSE SERVICE, to be made up from the following data:
Classify under City of......................."

A mucilaged slip was then pasted thereon, containing an advertisement of the defendants' business, consisting of six lines, in which its officers were named and information given as to consignments to be sent to it for shipment. At the bottom of the sheet was a dotted line for defendants' signature and the date of mailing. On it appears the name of the defendant company, by H. Bylenga, General Manager.

The plaintiff published defendants' advertisement in its 1927 and 1928 issues, and brings this action to recover the $100 claimed to be due it under

the contract. Defendants had judgment. Plaintiff seeks review by case-made.

Defendants' manager, while admitting his signature, testified that he did not read the printing in the oblique box in the upper right-hand corner; that he supposed he was merely signing a consent that plaintiff might publish the advertisement in its directory without charge to the defendants.

The trial court concluded as a matter of law:

"The minds of the parties hereto never met upon the terms of the alleged contract. That defendants never intended to contract with plaintiff that plaintiff should publish the data contained on the free listing clipping, in plaintiff's register, and to pay plaintiff therefor."

A meeting of the minds of the parties upon all essential points is necessary to constitute a valid contract. *Sterling & Son Co.* v. *Watson & Bennett Co.*, 193 Mich. 11; *Pangburn* v. *Sifford*, 216 Mich. 153.

This court has many times held that one who signs a contract will not be heard to say, when enforcement is sought, that he did not read it, or that he supposed it was different in its terms. *Gardner* v. *Johnson*, 236 Mich. 258; *Draeger* v. *Kent County Savings Ass'n*, 242 Mich. 486; *Powers* v. *Indiana & M. Elec. Co.*, 252 Mich. 585. But the general rule announced in those cases is not applicable when the neglect to read is not due to carelessness alone, but was induced by some stratagem, trick, or artifice on the part of the one seeking to enforce the contract. This exception was noted in the *Gardner Case*, wherein it was said:

"There is no testimony of procuring her signatures by trick, or artifice, no testimony of any act of fraud."

A fraud is usually accomplished by making its victims neglect the precautions essential to prevent injury. In *Schupp* v. *Davey Tree Expert Co.*, 235 Mich. 268, 271, this court said:

"The fraud worked because plaintiff was careless, but this did not render it any less a fraud."

In 6 R. C. L. p. 633, it is said:

"But the fact that the means of knowledge were open to him, were indeed easily available, and that nothing but gross negligence would have failed to discover the falsehood, do not preclude an inquiry into the truth as to whether he in fact had the knowledge, and was in fact misled by the stratagem of his adversary."

This statement of the law is a quotation from the decision in *Western Manfg. Co.* v. *Cotton & Long*, 126 Ky. 749 (104 S. W. 758, 12 L. R. A. [N. S.] 427), wherein a somewhat similar question was discussed at length. It was therein further said:

"While there is always a sharp struggle in the courts between the desire to repress fraud upon the one hand, and to discourage negligence and the opportunity and invitation to commit perjury by laying down the bars upon the other, the question seems to be settling down to hearing all the facts, still scrutinizing closely, and even suspiciously, the claim of a party to such an instrument that he had not read it. The fact is that very thing frequently happens. The rule of law is one of policy. Is it better to encourage negligence in the foolish, or fraud in the deceitful? Either course has most obvious dangers. But judicial experience exemplifies that the former is the least objectionable, and least hampers the administration of pure justice."

The question presented is whether the communication sent to defendants was designedly prepared

by the plaintiff in such a manner as to cause an ordinary business man to affix his signature in the place indicated for it without reading the boxed-in printed matter in the upper corner thereof.  In our opinion this question should be answered in the affirmative.

When the envelope was opened by Mr. Bylenga, his attention was first attracted to the letter it contained.  On reading it, he could not be chargeable with notice that the proposal to list his company's business in the directory was other than gratuitous.  On turning to the sheet accompanying it, he found, pasted thereon, a clipping containing an advertisement of the company's business, which he believed to have been taken from a magazine or directory in which it had been published without charge.  He testified that he did not examine the upper part of the sheet or read what was printed thereon.  He assumed that a checking of the correctness of the advertising matter and a consent to its publication were all that plaintiff required the defendants to do, and that was the only purpose he had in mind when he signed it.  That there was no meeting of the minds of the parties as required to make a valid contract is apparent, and the stratagem resorted to by plaintiff to secure defendants' signature relieves the defendants of the liability usually attaching to one who signs an instrument without ascertaining its true character.

Plaintiff relies on *Publication Division, etc.,* v. *Blakeslee,* 225 App. Div. 229 (232 N. Y. Supp. 508). The facts clearly distinguish it.  We quote from the opinion:

"The offer made by the plaintiff was mailed to the defendant from the plaintiff's place of business in the city of Baltimore, Md.  In large letters inclosed within an arrow pointing to certain printed matter are the words 'Here is Our Offer.' "

No letter accompanied it as in the case before us. The change in the form there used, although for the same years, is suggestive that plaintiff discovered from the lack of the acceptances that it was calling attention to the offer too plainly, and substituted the form here used therefor.

Our attention is called to *Shannon* v. *International Transp. Ass'n* (Ga. App.), 155 S. E. 773. In that case, this plaintiff brought an action to recover upon the acceptance of a similar offer, and was permitted to recover. In deciding it, however, the court said:

"The defendant did not undertake to set up any fraud or device as suggesting his failure to read the agreement. Under this state of facts, a verdict in favor of the plaintiff was demanded, and the judge of the superior court did not err in overruling the defendant's motion for new trial, based upon the general grounds."

The judgment is affirmed.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred.