## SMITH, HINCHMAN & GRYLLS ASSOCIATES, INC. v WAYNE COUNTY BOARD OF ROAD COMMISSIONERS

### OPINION OF THE COURT

1. COMPROMISE AND SETTLEMENT—FRAUD—MUTUAL MISTAKE—MISUNDERSTANDING.

   Settlements of disputed matters and compromises of unsettled claims are favored by the law, and usually will not be interfered with in the absence of fraud or mutual mistake, nor set aside because one of the parties did not understand it or its legal effect.

2. COMPROMISE AND SETTLEMENT—CONTRACTS—CONSTRUCTION—INTENT OF PARTIES.

   A compromise is a contract, and its construction is governed by the legal principles applicable to contracts generally; in construing and determining the effects of a valid compromise and settlement, the court's primary object is to effectuate the intention of the parties.

3. COMPROMISE AND SETTLEMENT—SET-OFF AND COUNTERCLAIM—AMOUNT OF RECOVERY.

   A plaintiff is entitled to recover sums due it under the terms of a compromise determined by a formula stipulated to by the parties as to the calculation of the claim and a counterclaim, but not a sum larger than either party had anticipated, nor an amount by which the sum produced by the settlement agreement exceeds the defendant's counterclaim.

### DISSENT BY J. H. GILLIS, P. J.

4. COMPROMISE AND SETTLEMENT—CONTRACTS—VALIDITY—MEETING OF THE MINDS.

   *A meeting of the minds of the parties upon all essential points is*

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 15 Am Jur 2d, Compromise and Settlement § 35.
[2, 6] 15 Am Jur 2d, Compromise and Settlement § 20.
[3] 15 Am Jur 2d, Compromise and Settlement §§ 12, 20.
[4, 5] 15 Am Jur 2d, Compromise and Settlement § 28 *et seq.*

*necessary in order that a contract be valid, and a court prop-
erly set aside and refused to enter judgment upon a settlement
stipulated to by the parties where there was no such meeting of
the minds.*

5. Compromise and Settlement—Contracts—Innocent Misrepre-
   sentation—Meeting of the Minds.

   *A settlement agreement should be set aside where it has devel-
   oped that a plaintiff, in calculating an amount due it for
   matters not included in the original claim but included for
   purposes of the compromise of a counterclaim, innocently mis-
   represented the amounts due so that the compromise did not
   constitute a meeting of the minds.*

6. Contracts—Construction—Intent of Parties—Salaries Em-
   ployees—Overtime.

   *The role of the court in actions* ex contractu, *when the language
   is clear and unambiguous, is basically limited to determining
   what the intention of the parties was from the four corners of
   the contract and in accordance with normal usage of the
   English language; thus, where a contract provides that a plain-
   tiff architect-engineer is to be paid a fee computed as actual
   payroll cost plus 100%, they are not entitled to compensation
   for overtime worked by salaried employees who were not paid
   overtime.*

Appeal from Wayne, Richard M. Maher, J. Sub-
mitted Division 1 November 7, 1974, at Detroit.
(Docket No. 19485.) Decided February 25, 1975.
Leave to appeal denied, 394 Mich 823.

Complaint by Smith, Hinchman & Grylls Associ-
ates, Inc., against the Wayne County Board of
Road Commissioners for money due on a contract.
Defendant counter-claimed, alleging excessive bill-
ings. An initial settlement was set aside, and
judgment entered for defendants. Plaintiff appeals.
Reversed.

*Beaumont, Smith & Harris* (by *Alfred E. Lind-
bloom),* for plaintiff.

*John P. Cushman,* General Counsel, and *Charles M. Sirhal,* for defendant.

Before: J. H. GILLIS, P. J., and ALLEN and PETER-SON,* JJ.

PETERSON, J. In 1961, the parties entered into a contract whereby plaintiff was to perform architectural and engineering services for defendant in connection with additions and improvements to Detroit Metropolitan Wayne County Airport. Those services were rendered over a period of years and, at its completion, following defendant's audit of plaintiff's books, there was a balance due and owing plaintiff of $47,369.19, for which sum plaintiff sued.

Defendant's refusal to pay the acknowledged balance was based on its claim that there had been a misinterpretation of the contract and that plaintiff's billings had been excessive by $105,366.83. Defendant accordingly counter-claimed for this amount, i.e., seeking a net recovery from plaintiff of $58,327.64.[1] Defendant's claim dealt with that part of the contract relating a portion of plaintiff's fees to its actual payroll cost. Defendant contended that since plaintiff did not pay its salaried supervisory employees for over-time, plaintiff's fee computation including over-time hours for such employees was erroneous. This was the only issue of consequence as trial commenced.

During trial, plaintiff's proofs indicated that while its supervisory employees were not paid overtime, they were given a $5 supper allowance

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] While these amounts are stipulated, there is a suspicion of error, $47,369.19 deducted from $105,366.83 being $57,997.64 most of the time.

when working overtime and received bonuses in the computation of which overtime was a factor. At this point the trial judge suggested a compromise by which plaintiff would be reimbursed for such expenditures. As a result, a stipulation was worked out by which (a) the acknowledged claim of plaintiff for $47,369.19 was confirmed; (b) the overcharge of $105,366.83 was agreed upon; but (c) plaintiff was to recover an amount for meal allowances and bonuses attributable to the project. The stipulation established a formula for that purpose *and also provided for a multiplication factor of 1.9*[2] so that plaintiff would not only recover its pro rata costs of such meal allowances and bonuses attributable to the project, but would also recover 90% in excess thereof.

We have no doubt that both parties viewed the stipulation, as the trial judge did, namely, as a compromise of defendant's counterclaim by which plaintiff would recover and defendant would pay some part thereof. In fact, after plaintiff's records had been reviewed and the various factors computed, the application of the stipulated formula thereto produced a figure of $123,914.19, exceeding the countercomplaint by $18,547.36. Defendant promptly repudiated the settlement, asserting misrepresentation in the negotiations and mistake in facts assumed as a basis therefor. The trial judge declined to enter judgment for plaintiff, set aside the settlement stipulation and scheduled the matter for trial before another judge, who held for defendant and entered judgment in its favor for the excess of the countercomplaint over plaintiff's claim.

Plaintiff appeals, claiming that there was a binding settlement agreement and that it is entitled to

[2] 1.9 was the "cost plus" factor of the contract itself, as amended.

judgment thereon; i.e., for its undisputed billing of $47,369.19, plus the $18,547.36 by which the computation resulting from the settlement formula exceeded the countercomplaint. It also claims that the judge who thereafter heard the matter erred in various ways. In view of our conclusions regarding the settlement agreement, it is unnecessary to consider the latter claims.

The bench opinion of the original trial judge in setting aside the settlement agreement is pertinent. He specifically noted that the negotiating parties were competent, experienced and honest. He also noted that the compromise related solely to defendant's counterclaim, there being no dispute that defendant owed plaintiff the $47,369.19 for which it sued, and said:

"Should the Court, under these circumstances, enter a judgment pursuant to the settlement agreement openly reached in court, where both parties are represented by talented attorneys, who presumably know what they are doing?

*   *   *

"I cannot, in good conscience, take the view of the plaintiff that I ought to thrust upon the County a judgment that to my mind is unconscionable, that is beyond what I had dreamed about when I talked about settlement to the parties.

*   *   *

"I find, on the face of it, that the settlement agreement, although stated on the record in the language that appears in the record, is not one that was so thoroughly understood by the parties themselves and in their relationship to it that it would be conscionable for the Court to impose this judgment on the County."

Nowhere does he find any misrepresentation by plaintiff or mistake of fact.

We construe this opinion to hold that, because

neither party realized that the formula adopted would produce a balance in plaintiff's favor exceeding defendant's counterclaim, it would be unconscionable to enter judgment thereon. We concur that judgment should not have been entered for the amount resulting from the settlement formula, but find that it was error to set aside the settlement stipulation.

"Settlements of disputed matters and compromises of unsettled claims are favored by the law, and it will be presumed that parties consult their own interests in making them. Usually they will not be interfered with in the absence of fraud or mutual mistake. * * * Nor will such settlement be set aside because one of the parties did not understand it or its legal effect." (Citations omitted.) *Booth Fisheries Co v Alpena Circuit Judge,* 170 Mich 611, 615–616; 135 NW 1063 (1912).

The trial judge specifically declined to find the misrepresentations claimed by defendant, and found no mistake of fact. The stipulation presented to the court was prepared by defendant's counsel, and defendant willingly went beyond the trial judge's cost-recovery suggestion by agreeing to the formula providing for reimbursement of 190% of those costs. There was no basis for setting aside the stipulation. See *Olshove v Pere Marquette R Co,* 245 Mich 369; 222 NW 771 (1929); 15 Am Jur 2d, Compromise and Settlement, § 21, p 956.

But that is not to say that plaintiff is entitled to a judgment for the amount by which the sum produced by the settlement agreement exceeded defendant's counterclaim. Again it must be noted that, while the stipulation spoke in terms of (a) plaintiff taking judgment for its undisputed claim of $47,369.19, (b) defendant taking judgment for its counterclaim of $105,366.83, and (c) plaintiff tak-

ing judgment for the sum produced by the settlement formula, the only issue being compromised was the counterclaim. The formula was not designed to reduce an unliquidated claim to certainty—had that been the case, the result would have been conclusive. Rather, it was designed to give the plaintiff some recovery against defendant's counterclaim as a means of resolving the legal uncertainty as to which of two interpretations was to be given the language of the contract. Considering the circumstances of the dispute, we have no doubt that this was the intention of the parties.

"A compromise is a contract, and its construction is governed by the legal principles applicable to contracts generally. It is subject to judicial interpretation in the light of the language used and the circumstances surrounding its making. Even if it is not a technical release, it may operate as such.

"In construing and determining the effects of a valid compromise and settlement, the court's primary object is to effectuate the intention of the parties." 15 Am Jur 2d, Compromise and Settlement, § 20, p 954.

Accordingly, to construe the compromise stipulation as we find the parties to have intended it, it must be read to provide recovery for the plaintiff of the sum produced by the stipulated formula, *but not to exceed the amount of defendant's counterclaim.*

Judgment shall accordingly be entered for plaintiff in the amount of $47,369.19, plus costs.

ALLEN, J., concurred.

J. H. GILLIS, P. J. *(dissenting).* This case involves a claim and a counterclaim, and the well-intentioned efforts of the trial judge in suggesting a

compromise that ultimately went far beyond what he or the parties had contemplated. It appears from this record that appellants themselves had doubts about entering into the settlement which they are now seeking to enforce.[1]

In general, public and judicial policies favor settlements. *Steele v Wilson,* 29 Mich App 388, 395; 185 NW2d 417, 420 (1971). However, a compromise and settlement is a contract, and is governed by the legal principles applicable to contracts generally. 15 Am Jur 2d, Compromise and Settlement, § 20, p 954.

In order to constitute a valid contract, there must be a meeting of the minds of the parties upon all essential points. *International Transportation Ass'n v Bylenga,* 254 Mich 236, 239; 236 NW 771, 772 (1931), *Pangburn v Sifford,* 216 Mich 153; 184 NW 512 (1921), *W C Sterling & Son Co v Watson & Bennett Co,* 193 Mich 11; 159 NW 381 (1916).

In this case, there was no such meeting of the minds and the trial judge committed no error in setting aside the settlement stipulation and refusing to enter judgment upon it.

The testimony at the evidentiary hearing tended to show that the appellee was misled by innocent misrepresentations on the part of appellant. Appellee's accountant testified that, in a conversation between the adversaries held in the courtroom, "someone" among the appellant's representatives said that 50 to 60 persons were involved and that $750 was a representative bonus. These statements

---

[1] Appellant's counsel stated, at the opening of the evidentiary hearing: "The second day of the trial your Honor came up with a suggestion of a settlement. The settlement that was entered into was entirely your Honor's suggestion. I personally was opposed to it. It was a gamble. I didn't know how the thing was going to come out. It was purely a gamble."

were confirmed by two other witnesses for appellee.

Further, appellee's accountant testified that, at the time of the settlement negotiations, he calculated that the cost of the bonuses and dinner money would range between $20,000 and a maximum of $37,500. Instead, after a three-week audit of appellant's books, it was determined that the cost would be $123,914.19.

It should be kept in mind that, at the beginning of the negotiations, appellant had a claim of $47,369.19 and appellee a counterclaim of $105,366.83. When the $123,914.19 figure was added to appellant's claim, and appellee's counterclaim was subtracted, appellee's liability to appellant became $65,916.55. The result of the purported settlement, then, was that appellee now owed appellant *$18,547.36 more than appellant's original claim.*

The judge, as well as the defendant, was shocked by the results of the computation and stated:

"[W]hat I thought was fair is now turning out to be a disaster so far as the defendant is concerned, because we are obtaining a figure never contemplated by the defendant at all, and had they known about it, they certainly would never have entered into this agreement."

And, after hearing the testimony of both parties, the judge stated in his bench opinion:

"I find, on the face of it, that the settlement agreement, although stated on the record in the language that appears in the record, is not one that was so thoroughly understood by the parties themselves and in their relationship to it that it would be unconscionable for the court to impose this judgment on the County."

Furthermore, appellee was entitled to the relief given because of appellant's innocent misrepresentations. In *Converse v Blumrich,* 14 Mich 109, 123 (1866), Mr. Justice COOLEY stated:

"If one obtains the property of another, by means of untrue statements, though in ignorance of their falsity, he must be held responsible as for a legal fraud." (Citations omitted.)

See also *Aldrich v Scribner,* 154 Mich 23; 117 NW 581 (1908), *Rosenberg v Cyrowski,* 227 Mich 508; 198 NW 905 (1924), *Essenburg v Russell,* 346 Mich 319; 78 NW2d 136 (1956), *Kroninger v Anast,* 367 Mich 478; 116 NW2d 863 (1962).

In summary, since there was no meeting of the minds, there was no contract, and the settlement should not be given effect.

Having reached this conclusion, it is now necessary to give some consideration to the judgment and opinion of the trial court on the substantive issue involved in the case. It should be noted that after the abortive attempt at a compromise, the first trial judge disqualified himself and a second judge was assigned to the case.

The issue is this: When a contract provides that architect-engineers be paid a fee computed as "actual payroll cost plus 100%", are they entitled to compensation for hours allegedly worked by salaried employees in excess of the standard forty-hour week or eight-hour day, when such employees were *not* paid overtime?

The trial court found that the plaintiff-architect was not entitled to compensation for the overtime hours worked by salaried employees and entered judgment for defendant. The trial judge relied on the case of *Montgomery v Taylor & Gaskin, Inc,* 47

Mich App 269, 274; 209 NW2d 472, 475 (1973), which states:

"The role of the court in actions *ex contractu,* when as here the language is clear and unambiguous, is basically limited to determining what the intention of the parties was from the four corners of the contract and in accordance with normal usage of the English language."

A review of the record below has revealed that there was no error in the judge's determinations.

Judgment should be affirmed.