# STATE OF MICHIGAN

# COURT OF APPEALS

FOREST HILLS COOPERATIVE,

      Petitioner-Appellant,

v

CITY OF ANN ARBOR,

      Respondent-Appellee.

UNPUBLISHED
December 5, 2017

No. 334315
Michigan Tax Tribunal
LC No. 00-277107

Before: M. J. KELLY, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Petitioner Forest Hills Cooperative appeals by right a Michigan Tax Tribunal order denying petitioner's motion for reconsideration and motion to set aside a consent judgment. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This matter arises out of a valuation dispute with the City of Ann Arbor over eight parcels of real estate owned by petitioner. This matter was previously appealed to this Court in Docket Nos. 305194 and 306479, as reflected in the published opinion of *Forest Hills Coop v City of Ann Arbor*, 305 Mich App 572; 854 NW2d 172 (2014), lv den 497 Mich 948 (2014). After the matter was remanded to the tax tribunal, the parties eventually entered into a stipulated consent judgment for a reduction in the total taxable value of the properties by $180,000.00. Petitioner subsequently moved to set aside that consent judgment on the theory that the taxable values of the properties had already been reduced by a few thousand dollars pursuant to the tax tribunal order that had given rise to the first appeal in this matter, a fact purportedly unknown to the parties at the time the consent judgment was entered into, and so it was a mutual mistake of fact that the consent judgment reduced the values from the original taxable values. Respondent argued, inter alia, that petitioner was well aware of the reduction because it had cashed a refund check from respondent in the amount of the difference, and in any event petitioner received exactly what it had negotiated. The tax tribunal found "no evidence Washtenaw County revised the original taxable values" and thus found no mistake or fraud in the consent judgment. It then denied reconsideration.

As previously stated, this matter has already been before this Court, in consolidated cases, proceeding from the Michigan Tax Tribunal. In relevant part, this Court stated:

> These consolidated cases involve property tax assessments for nonprofit cooperative housing units located in the city of Ann Arbor (City) owned by petitioner/plaintiff Forest Hills Cooperative. In Docket No. 305194, Forest Hills appeals as of right the June 1, 2011 judgment of the Michigan Tax Tribunal concerning the property tax assessments for tax years 2000 through 2009. In Docket No. 306479, Forest Hills appeals as of right the September 28, 2011 circuit court order granting summary disposition pursuant to MCR 2.116(I)(2) in favor of defendants—the City and the Ann Arbor City Assessor (City Assessor)— with respect to Forest Hills' constitutional claim concerning the property tax assessments. [*Forest Hills Coop v City of Ann Arbor*, 305 Mich App 572, 578; 854 NW2d 172 (2014), lv den 497 Mich 948 (2014).]

This Court ultimately affirmed in part, reversed in part, and remanded for the tax tribunal to make an independent determination of the amount of functional and economic obsolescence, if any, to be used to determine the true cash value of the improved parcels under the cost-less-deprecation approach, an independent determination of the true cash value of the vacant parcel, and for other proceedings consistent with these determination. *Id*. at 593. While the prior appeal was pending, pursuant to the final judgment, the treasurer for Washtenaw County recorded adjustments to the taxable value of Forest Hills and issued a refund check based on the values in the final opinion and judgment and the proper methodology of partial uncapping. Forest Hills cashed that check.

After this Court sent the case back for remand, petitioner and respondent entered into a Stipulation for Consent Judgment. The parties agreed to a reduction in the taxable value of $180,000. Explicitly included in the stipulation was a table of the original taxable and assessed values i.e., the taxable values in effect at the commencement of this action and the subject of the initial petition. Petitioner filed a motion to set aside consent judgment claiming a mutual mistake was made between both parties that the original values did not match with those currently on the roll for the 2000-2009 tax years. The motion was denied and petitioner then filed a motion for reconsideration, also denied.

This appeal followed.

## II. STANDARD OF REVIEW

In the absence of fraud, this Court reviews tax tribunal decisions "limited to determining whether the tribunal made an error of law or adopted a wrong legal principle." *Menard, Inc v Escanaba*, ___Mich App___, ___; ___ NW2d ___ (2016) (Docket No. 325718); slip op at 5. Furthermore, "[t]he tribunal's factual findings are upheld unless they are not supported by competent, material, and substantial evidence." *Id*. Substantial evidence must be more than a scintilla of evidence, but may be less than preponderance of evidence. *Id*. "As a general rule, consent judgments will not be set aside or modified except for fraud or mutual mistake." *Trendell v Solomon*, 178 Mich App 365, 367; 443 NW2d 509 (1989). Furthermore, this Court reviews for abuse of discretion a trial court's decision on a motion to set aside a consent judgment. *Id* at 369-370.

-2-

III. ANALYSIS

Petitioner argues that the tax tribunal's decision to deny petitioner's motion to set aside the consent judgment due to mutual mistake was erroneous. We disagree. The tax tribunal did not err in accordance with MCR 2.612(C)(1)(a), when it denied petitioner's motion to set aside the consent judgment and motion for reconsideration thereafter. Petitioner failed to show that the tribunal court committed a mutual mistake or that there was fraud in the consent judgment.

Again, "[a]s a general rule, consent judgments will not be set aside or modified except for fraud or mutual mistake." *Trendell*, 178 Mich App at 367. In the absence of fraud or mistake a consent judgment is valid and binding and the judgment will not be invalidated when a party has failed to uphold a condition made by the agreement. *Id*. at 369. *Woods Bros Const Co v Yankton County*, 54 F2d 304, 308 (CA 8, 1931).

Under MCR 2.612(C)(1)(a) and (c), this Court has held that final judgments can be relieved under certain conditions:

(1) On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:

(a) Mistake, inadvertence, surprise, or excusable neglect.

* * *

(c) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

"A change of heart is normally insufficient to justify the setting aside of a settlement agreement." *Groulx v Carlson*, 176 Mich App 484, 492; 440 NW2d 644 (1989). See also, *Metropolitan Life*, supra, 165 Mich App 123; 418 NW2d 700 (1987). In *Groulx*, the court was advised by counsel that a settlement had been reached. The terms were conveyed to the court on the record and agreed upon by both parties. Thus the court entered a consent judgment on the basis that all parties had agreed to the terms. The defendants then claimed that the terms were not those agreed upon in open court. *Id*. at 486-488. This Court observed:

Any misgivings concerning the terms of the settlement agreement which defendants or defendants' counsel may have had were brought to the attention of the trial court only after the agreement had been formally entered in the record and only after defense counsel expressly informed the court that defendants specifically accepted the terms of the agreement. [*Id*. at 492.]

For the agreement to be binding there must be "a meeting of the minds." *Groulx*, 176 Mich App at 491. This Court concluded that "the express words of the parties' attorneys and the parties' visible acts indicate[d] that there [had been] a meeting of the minds regarding the agreement" when it was read into the record. *Id*. It was not an abuse of discretion for the trial court to reject subsequent misgivings as an adequate basis to set aside the settlement, particularly "in view of

[the] defendants' failure to have supported their claims of mistake, fraud, and excusable neglect with satisfactory evidence of any kind." *Id*. at 492-493.

In contrast to *Groulx*, there was no debate over whether the terms in this case were discussed in open court. However, the core issue is nevertheless whether there was a "meeting of the minds" when the agreement was entered into and whether petitioner can support its assertion that any such meeting of the minds was premised on a mutual factual misunderstanding. Petitioner argues that the original values in the stipulation and consent judgment were not the proper values to be understood as the "original." As an initial matter, this is a creative interpretation of the word "original," when petitioner apparently means "present" however that word was not actually used. Furthermore, petitioner could not possibly have been unaware of the revised values: they were based on a 2011 judgment of the tax tribunal that it had previously appealed, and furthermore shortly after the values were revised, the county sent petitioner a refund check that petitioner cashed. Consequently, petitioner had already received the benefit of that reduction, so a further reduction from that value would arguably be "double dipping," making petitioner's argument that it would not have "agreed to give up a benefit it had received" nonsensical. The values to which the parties agreed were plainly outlined in the judgment and accessible to each party.

Petitioner further argues that pursuant to the "law of the case doctrine," this Court's prior opinion remanding the case required respondent to use the revised values. The law of the case doctrine "provides that if an appellate court has decided a legal issue and remanded the case for further proceedings, the legal issue determined by the appellate court will not be differently decided on a subsequent appeal in the same case where the facts remain materially the same." *Grace v Grace*, 253 Mich App 357, 362; 655 NW2d 595 (2002). This doctrine is completely irrelevant in this case as the parties' consent judgment was not before this Court in the prior appeal. Furthermore, the law of the case doctrine does not shield parties from their own stipulated agreements. *Chapdelaine v Sochocki*, 247 Mich App 167, 177; 635 NW2d 339 (2001). Furthermore, petitioner did not assert the law of the case doctrine in the tax tribunal, ostensibly waiving it. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008).

Finally, petitioner correctly argues that consent judgments are contracts and must be evaluated as such. *Smith, Hinchman & Grylls Assoc Inc v Bd of Co Road Comm'rs of Wayne Co*, 59 Mich App 117, 123; 229 NW2d 338 (1975). Petitioner fails to advance any effective argument regarding this issue, but apparently believes that the settlement agreement is ambiguous, which, if true, would subject the consent judgment to judicial interpretation. See *SSC Assoc Ltd Partnership v Gen Retirement Sys of City of Detroit*, 192 Mich App 360, 363; 480 NW2d 275 (1991). In contrast, "the law is clear that where a written contract is not ambiguous the intention of the parties as expressed on the face thereof must be followed and extraneous matter will not be considered." *L & S Bearing Co v Morton Bearing Co*, 355 Mich 219, 224; 93 NW2d 899 (1959). A term is ambiguous if it is susceptible to more than one reasonable meaning. *SSC Assoc*, 192 Mich App at 363. Apparently, petitioner believes that "original" is susceptible to more than one meaning. However, "[a] onesided, self-serving interpretation is of no assistance in interpretation." *Gaydos v White Motor Corp*, 54 Mich App 143, 149; 220 NW2d 697 (1974). Otherwise, all definitions of *original* unambiguously refer to a first instance, source, or beginning. See Merriam-Webster's Collegiate Dictionary, 11th ed. Petitioner

essentially wishes the word to pertain to a later-in-time derivative, which is not a reasonable meaning, and is in fact nonsensical.

There is nothing ambiguous about the consent judgment. The values used in the consent agreement were reduced by $180,000 in total taxable value, which was facially understood as the agreement between both parties. The values were seen by and agreed upon by both parties. Petitioners claim that they were not aware of the revised values on the tax roll at the time cannot be true, as the refund check was cashed in 2011 based on this said revision. It was petitioner's job to confirm the values in the consent judgment with those on the roll before entering into agreement, and it is not for this Court to determine if a party realizes their mistake after the fact. This result is not in any way unfair, because petitioner did in fact receive the benefit of the 2011 reduction *in addition to* the $180,000 reduction agreed to in the consent judgment. The evidence shows that there was indeed a "meeting of the minds" and mutual assent to enter into the consent judgment.

Affirmed.

/s/ Michael J. Kelly
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra